UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
HUAXINTONG INTERNATIONAL INVESTMENT :
MANAGEMENT LIMITED and NEW ASIA (CHINA) :
INTERNATIONAL GROUP COMPANY LIMITED, :
:
                   Plaintiffs, :
:
          -v- : 24 Civ. 8003 (JPC)
:
HONGKUN USA INVESTMENT LLC and HONGKUN : OPINION AND ORDER
USA REAL ESTATE HOLDINGS LLC, :
:
                   Defendants. :
:
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

On October 21, 2024, Petitioners Huaxintong International Investment Management Limited ("Huaxintong") and New Asia (China) International Group Company Limited ("New Asia") petitioned this Court for an order confirming the decision and award of the Hong Kong International Arbitration Centre ("HKIAC") against Respondents Hongkun USA Investment LLC ("Hongkun Investment") and Hongkun USA Real Estate Holdings LLC ("Hongkun Real Estate"). For the following reasons, the Petition is granted.

## I. Background

**A.**     **Facts**

Huaxintong and New Asia are affiliated corporate entities organized under the laws of the British Virgin Islands and Hong Kong, respectively. Dkt. 1 ("Petition") ¶¶ 1-2. Hongkun Investment and Hongkun Real Estate, both Delaware limited liability companies with principal places of business in New York, are subsidiaries of Hongkun Group, a global real estate investment development and management company headquartered in Beijing. *Id.* ¶¶ 3-4. Between February

2019 and January 2020, Petitioners and Hongkun Investment, with Hongkun Real Estate as a guarantor, entered into four loan agreements (collectively, the "Loan Agreements") to fund Respondents' land development projects in the United States. Dkt. 1, Exh. E ("Original Award") ¶¶ 72-85.

First, on or about February 20, 2019, New Asia lent Hongkun Investment $3 million over a loan period of two years, pursuant to a loan agreement dated February 17, 2019. Petition ¶ 9; Dkt. 1, Exh. A ("February 2019 Loan") at 12, 22,[1] arts. 1-2; Original Award ¶¶ 74-76. The borrowing interest rate for the February 2019 Loan was 10% per annum, and, after the loan expired, Hongkun Investment was to distribute the accrued interest at an annualized rate of 8% for all borrowed money during the borrowing period. February 2019 Loan, art. 3.1. Second, on May 6, 2019, Huaxintong lent $5 million to Hongkun Investment over two years, pursuant to a loan agreement dated April 30, 2019. Petition ¶ 10; Dkt. 1, Exh. B ("April 2019 Loan") at 12, 21, arts. 1-2; Original Award ¶¶ 78-79. The borrowing interest rate for the April 2019 Loan was 10% per annum, and, following the loan's expiration, Hongkun Investment was to distribute the accrued interest at an annualized rate of 8% for all borrowings during the borrowing period. April 2019 Loan, art. 3.1. Third, on May 28, 2019, Huaxintong lent Hongkun Investment an additional $5 million for thirty days at a borrowing interest rate of 20% per annum, pursuant to a loan agreement dated May 24, 2019. Petition ¶ 11; Dkt. 1, Exh. C ("May 2019 Loan") at 20, 29, arts. 1-3; Original Award ¶¶ 80-81. A supplemental contract between the same parties was signed on May 29, 2019, which extended the period for this third loan to forty days. May 2019 Loan at 30-34; Original Award ¶ 82. By way of a second supplemental contract signed at the conclusion of that period on

---

[1] Page citations to the Loan Agreements are to the ECF-generated page numbers for those documents.

July 6, 2019, the loan was extended another ninety days. May 2019 Loan at 35-38; Original Award ¶ 82. Finally, on January 31, 2020, Huaxintong executed a fourth loan agreement with Hongkun Investment whereby Huaxintong lent $2 million to Hongkun Investment over four months at a borrowing interest rate of 20% per annum. Petition ¶ 12; Dkt. 1, Exh. D ("January 2020 Loan") at 11, 21, arts. 1-3; Original Award ¶¶ 84-85. Hongkun Real Estate served as one of several guarantors to these loans, with its Chief Executive Officer signing each Loan Agreement. February 2019 Loan at 13, 23; April 2019 Loan at 13, 22; May 2019 Loan at 21, 29, 31, 34, 36, 38; January 2020 Loan at 12, 22.

The Loan Agreements contained identical dispute resolution provisions located at Article 9.3 which, when translated into English, provided:

> Any dispute, controversy, disagreement or claim arising out of or relating to this Loan Agreement, including the validity, interpretation, performance, breach, or termination thereof, or any non-contractual dispute arising out of or relating to this Loan Agreement, shall be referred to arbitration administered by the Hong Kong International Arbitration Centre under the HKIAC Administered Arbitration Rules in force when the Notice of Arbitration is submitted. The award of the arbitration tribunal shall be final and binding on the parties to this Loan Agreement.

February 2019 Loan, art. 9.3; April 2019 Loan, art. 9.3; May 2019 Loan, art. 9.3; January 2020 Loan, art. 9.3.

The Loan Agreements also contained identical provisions allowing additional liability in the event of breach of contract. *See* February 2019 Loan, art. 8; April 2019 Loan, art. 8; May 2019 Loan, art. 8; January 2020 Loan, art. 8. Under these provisions, "[i]f one party's breach of contract causes the other party to take the arbitration method to realize its rights, the breaching party shall bear the expenses (including but not limited to attorney's fees, travel expenses, etc.) paid by the observant party for the realization of the rights." February 2019 Loan, art. 8.1; April 2019 Loan, art. 8.1; May 2019 Loan, art. 8.1; January 2020 Loan, art. 8.1. The Loan Agreements also contain materially identical provisions requiring the borrower to pay damages to the lender in the event of

3

breach based on the total unpaid amount and at an annual interest rate of 36% until repayment is made to the lender.  February 2019 Loan, art. 8.2; April 2019 Loan, art. 8.2; May 2019 Loan, art. 8.2; January 2020 Loan, art. 8.2.

Beginning in August 2020 and extending through August 2021, Petitioners sent Respondents multiple letters demanding that the loans be repaid.  Original Award ¶¶ 88-93.  After these demands were unsuccessful, *id.*, Petitioners initiated arbitration pursuant to the Loan Agreements' dispute resolution provisions by submitting notices of arbitration to the HKIAC on December 6, 2021, *id.* ¶ 94.  *See* Petition ¶ 15.

Petitioners and Respondents appeared in the arbitration with their legal representatives and designated two co-arbitrators, who in turn jointly designated the presiding arbitrator to lead the three-member tribunal (the "Tribunal").  Original Award ¶¶ 7, 14, 22-24; *see* Petition ¶ 16. Petitioners requested that the Tribunal order Hongkun Investment to pay them the principal amounts owed under the Loan Agreements plus interest and liquidated damages, varying in four different amounts based on their relation to the Loan Agreements, running from past dates up until the amounts owed under the Loan Agreements were paid in full.  Original Award ¶¶ 95-98. Additionally, Petitioners requested that the Tribunal find Hongkun Real Estate jointly and severally liable for the requested payments as to the February 2019 Loan, the April 2019 Loan, and the May 2019 Loan.  *Id.* ¶¶ 95-97.  Respondents urged the Tribunal to reject all of Petitioners' claims or, in the alternative, to lower the interest and liquidated damages amounts sought by Petitioners.  *Id.* ¶ 101.  The Tribunal held a hearing in Hong Kong between September 5, 2023, and September 7, 2023, and received post-hearing briefing.  *Id.* ¶¶ 57-59.  On January 17, 2024, the Tribunal declared the proceedings closed.  *Id.* ¶ 60.

On March 4, 2024, the Tribunal rendered its decision, in which the Tribunal "accepted all the [Petitioners'] requests for relief and rejected the Respondents' requests for relief." *Id.* ¶ 300. The Tribunal determined that Hongkun Investment shall pay New Asia $3,985,610.96 in connection with the February 2019 Loan and a daily sum of $3,857.76 running from October 30, 2020, until the February 2019 Loan is fully repaid; pay Huaxintong $6,389,315.07 in connection with the April 2019 Loan and a daily sum of $6,221.53 running from October 18, 2020, until the April 2019 Loan is fully repaid; pay Huaxintong $5,356,164.38 in connection with the May 2019 Loan and a daily sum of $5,282.79 running from October 5, 2019, until the May 2019 Loan is fully repaid; and pay Huaxintong $2,133,698.63 in connection with the January 2020 Loan and a daily sum of $2,104.47 running from June 1, 2020, until the January 2020 Loan is fully repaid. *Id.* ¶ 305.[2] The Tribunal further ruled that Hongkun Real Estate is jointly and severally liable for the payments awarded to Petitioners regarding the February 2019 Loan, the April 2019 Loan, and the May 2019 Loan, and that Respondents shall pay to Petitioners the cost of the arbitration plus interest. *Id.*

On April 17, 2024, the Tribunal issued a memorandum correcting errors in the Original Award. Dkt. 1, Exh. F ("Corrected Award"). Among other things, the Corrected Award determined that Hongkun Real Estate is jointly and severally liable for the payments owed to Petitioners in connection with all the Loan Agreements, including the January 2020 Loan. *Id.* ¶ 26.

---

[2] The Tribunal identified that these daily sums of money as "liquidated damages" provided for in the Loan Agreements at Article 8.2. Original Award ¶¶ 86, 274. Under both the Original Award and the Corrected Award, the liquidated damages set forth for the February 2019 Loan and the April 2019 Loan appear slightly less than the 36% annualized interest rate set forth in Article 8.2 of the Loan Agreements. Petitioners make no mention of this discrepancy, but the Court finds that it does not affect its ability to confirm the award given this difference cuts in Respondents' favor.

B.      **Procedural History**

On October 21, 2024, Huaxintong and New Asia petitioned the Court for confirmation of the Original Award and the Corrected Award, attaching both Awards and the Loan Agreements. Dkt. 1.  As proceedings to confirm an arbitration award must be "treated as akin to a motion for summary judgment," *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006), the Court set a briefing schedule for Petitioners' motion on October 25, 2024, Dkt. 3.  Petitioners filed a memorandum of law in support of their petition on November 6, 2024.  Dkt. 8.  Respondents were served with copies of the summons and the Petition, including the supporting documentation, on November 5, 2024.  Dkt. 10.  Respondents were also served with copies of the Court's October 25 Order and Petitioners' memorandum of law on November 12, 2024.  Dkt. 11.  Respondents' deadline to oppose the Petition was December 13, 2024.  *See* Dkt. 3.  To date, no opposition has been filed, and Respondents have not appeared in this action.

## II. Legal Standard

Petitioners bring this action under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, 330 U.N.T.S. 38 (June 10, 1958) (as applied through the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-208), which is also known as the New York Convention, *see Drip Cap., Inc. v. M/S. Goodwill Apparels*, 665 F. Supp. 3d 511, 514 (S.D.N.Y. 2023).  Article I of the New York Convention states that it "shall apply to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought, and arising out of differences between persons, whether physical or legal," in addition "to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought."  New York Convention, art. I(1).

Title 9, United States Code, Section 203 confers "federal jurisdiction over actions to confirm or vacate an arbitral award that is governed by the [New York] Convention." *Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012). A party may seek an order from a district court confirming an arbitral award that falls under the New York Convention within three years of the date of the award. 9 U.S.C. § 207. An arbitration agreement falls within the scope of the New York Convention if four requirements are met: "(1) there must be a written agreement; (2) it must provide for arbitration in the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) it cannot be entirely domestic in scope." *Dumitru v. Princess Cruise Lines, Ltd.*, 732 F. Supp. 2d 328, 335 (S.D.N.Y. 2010) (quoting *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999)).

The Second Circuit has instructed that "[c]onfirmation under the [New York] Convention is a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm." *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007) (citing *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005)). "The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention." 9 U.S.C. § 207. "Article V of the [New York] Convention specifies seven exclusive grounds upon which courts may refuse to recognize an award." *Encyclopaedia Universalis*, 403 F.3d at 90; *see id.* at 92 ("[A] district court is strictly limited to the seven defenses under the New York Convention when considering whether to confirm a foreign award.").

Specifically, the New York Convention provides that recognition and enforcement of an award "may be refused" only if the party against whom the award is invoked "furnishes . . . proof" that: (1) the parties to the arbitration agreement were "under some incapacity" or the agreement "is not valid" under the law designated by the parties, or, in the event they have not designated any, the law of the country where the award was made; (2) the party against whom the award is invoked "was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case"; (3) "[t]he award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration," although any "part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced"; (4) "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place"; or (5) "[t]he award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made."  New York Convention, art. V.  Recognition and enforcement may also be refused if "the competent authority in the country where recognition and enforcement is sought finds that" (6) "[t]he subject matter of the difference is not capable of settlement by arbitration under the law of that country" or (7) "[t]he recognition or enforcement of the award would be contrary to the public policy of that country."  *Id.*  The burden of establishing one of these defenses is a "heavy one, as 'the showing required to avoid summary confirma[tion] is high.'"  *Encyclopaedia Universalis*, 403 F.3d at 90 (quoting *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997)).

"When confirming an award, a district judge 'does little more than give the award the force of a court order.'" *Temsa Ulasim Araclari Sanayi ve Ticaret A.S. v. CH Bus Sales, LLC*, No. 22 Civ. 492 (JPC), 2022 WL 3974437, at *4 (S.D.N.Y. Sept. 1, 2022) (quoting *Zeiler*, 500 F.3d at 169). And in doing so, a court gives great deference to the arbitrator's decision. *See Thai-Lao Lignite (Thai.) Co. Ltd. v. Gov't of Lao People's Democratic Republic*, 492 F. App'x 150, 152 (2d Cir. 2012) ("[A]lthough the [New York] Convention recognizes that an award may not be enforced where predicated on a subject matter outside the arbitrator's jurisdiction, it does not sanction second-guessing the arbitrator's construction of the parties' agreement." (internal quotation marks omitted)). "But even if a petition to confirm is unopposed, a court must still ensure that judgment is proper as a matter of law under the undisputed facts." *CH Bus Sales*, 2022 WL 3974437, at *4.

### III.  Discussion

#### A.  Jurisdiction

The Court has jurisdiction under the New York Convention. The application is timely, having been brought within three years of the Tribunal's March 2024 decision in the Original Award and its April 2024 decision in the Corrected Award. *See* 9 U.S.C. § 207.

The Loan Agreements also satisfy the four jurisdictional requirements of the treaty. *See Dumitru*, 732 F. Supp. 2d at 335; 9 U.S.C. § 202. First, the Loan Agreements are written agreements. *See generally* February 2019 Loan; April 2019 Loan; May 2019 Loan; January 2020 Loan. Second, the Loan Agreements each provided for arbitration in Hong Kong, which is a signatory of the New York Convention. February 2019 Loan, art. 9.3; April 2019 Loan, art. 9.3; May 2019 Loan, art. 9.3; January 2020 Loan, art. 9.3; *see Estate of Ke v. Yu*, 105 F.4th 648, 654 (4th Cir. 2024) (recognizing that "both Hong Kong and the United States are signatories" to the New York Convention). Third, the subject matter of the Loan Agreements—financing for

9

Respondents' land development projects in the United States—is commercial in nature. *See* Original Award ¶ 72. Fourth, the Loan Agreements were non-domestic agreements under 9 U.S.C. § 202 because the lending of money by Huaxintong and New Asia—companies registered in the British Virgin Islands and Hong Kong, respectively, Petition ¶¶ 1-2—to Hongkun Investment—a company registered in the United States, *id.* ¶ 3—was not entirely domestic in scope. *See Zeiler*, 500 F.3d at 164 (holding that the New York Convention applied to an arbitration agreement between Israeli corporations and United States corporations because "[t]he commercial transactions decided in the arbitration have a clear international character"); *Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 19 (explaining that the New York Convention confers federal jurisdiction because the award "involv[es] parties domiciled or having their principal place of business outside the enforcing jurisdiction" (internal quotation marks omitted)); *see also generally* February 2019 Loan; April 2019 Loan; May 2019 Loan; January 2020 Loan.

Accordingly, the Court has jurisdiction over the Petition.

**B.      Confirmation of the Awards**

Petitioners also have adequately established that there is no genuine issue of material fact precluding judgment in their favor.

First, the Tribunal's findings adhered to the terms of the Loan Agreements and were within the bounds of its authority. The Loan Agreements provided for arbitration of disputes before a tribunal of the HKIAC. February 2019 Loan, art. 9.3; April 2019 Loan, art. 9.3; May 2019 Loan, art. 9.3; January 2020 Loan, art. 9.3. Petitioners initiated arbitration by submitting notices of arbitration to the HKIAC on December 6, 2021, Original Award ¶ 94; Petition ¶ 15, after which Petitioners and Respondents each designated a co-arbitrator, who in turn jointly designated a presiding arbitrator, to properly constitute the Tribunal in accordance with the agreed-upon

HKIAC rules, Original Award ¶¶ 22-24; Petition ¶ 16.  After considering the parties' Joint Statement of Non-Contentious Facts, exhibits, witness statements, and "a full exchange of written pleadings and oral submissions addressing each of the[] issues" it ultimately ruled upon, Original Award ¶¶ 35, 39, 41-42, 61, 105, the Tribunal found that the Loan Agreements obliged Hongkun Investment to pay Petitioners the principal amounts of money borrowed, accrued interest, and additional daily sums of money until the amounts owed under the Loan Agreements were paid in full.  Corrected Award ¶ 26.  The Tribunal also determined that Hongkun Real Estate is jointly and severally liable for the payments owed by Hongkun Investment, *id.*, and ordered that both Respondents shall pay to the Petitioners the cost of the arbitration plus interest, Original Award ¶ 305.  Respondents also were notified of the Petitioners' application for correction of the Original Award and did not object to the requested changes, which were then reflected in the Corrected Award.  Corrected Award ¶¶ 19-22.

"The burden of proof with respect to the affirmative defenses set forth in the [New York] Convention . . . lies with the respondent[s]."  *CH Bus Sales*, 2022 WL 3974437, at *5 (citing *Encyclopaedia Universalis*, 403 F.3d at 90).  Respondents have not appeared in this action, nor have they opposed the Petition.  Where, as here, the "non-movant does not respond, its failure to contest issues not resolved by the record will weigh against it."  *D.H. Blair & Co.*, 462 F.3d at 109; *see also PKT Assocs., Inc. v. Granum Grp., LLC*, No. 18 Civ. 1169 (VEC), 2018 WL 3392879, at *1-2 (S.D.N.Y. July 12, 2018) (granting a petition to confirm an arbitration award pursuant to the New York Convention and explaining that "if a petition to enforce an arbitration award is unopposed, a court need not inquire on its own into whether an exception to enforcement applies" (citation omitted)).  Notwithstanding Respondents' failure to respond to the Petition, this

11

Court has reviewed the materials submitted in connection with the Petition and nothing in that record suggests that any of the defenses under the New York Convention would apply in this case.

The Court also confirms the amount awarded by the Tribunal. The Loan Agreements required Respondents to repay Petitioners for the principal sums borrowed plus interest, and those terms were adequately considered by the Tribunal as the basis for the amount awarded to Petitioners. Original Award ¶¶ 257-283. The Tribunal reasonably concluded that the liquidated damages set forth in Article 8 of the Loan Agreements were not unconscionable under governing law. *Id.* ¶¶ 272-278. Article 8.1 of the Loan Agreements also provided for expenses in the event of a breach "including but not limited to attorney's fees," February 2019 Loan, art. 8.1; April 2019 Loan, art. 8.1; May 2019 Loan, art. 8.1; January 2020 Loan, art. 8.1, and the Tribunal reasonably concluded that this language gave it the authority to award attorneys' fees and costs, including arbitration costs, Original Award ¶¶ 288-304. The Court finds no basis to second-guess the Tribunal's decision to hold Respondents liable for those fees and costs.

Taken together, the undisputed facts—specifically, the four Loan Agreements, the Original Award, and the Corrected Award—show the absence of any genuine issue of fact that the Original Award, as modified by the Corrected Award, should be confirmed. Nothing in the record suggests that any of the defenses listed in the New York Convention would preclude confirmation. *See D.H. Blair & Co.*, 462 F.3d at 110; *see also Cessna Fin. Corp. v. Gulf Jet LLC*, No. 14 Civ. 2149 (ALC), 2015 WL 337556, at *4 (S.D.N.Y. Jan. 26, 2015) (granting an unopposed petition to confirm an arbitral award because the petitioner's submissions "establish[] the existence of a valid and binding contract and arbitration agreement between the parties" and "a 'barely colorable' justification for the Award"). "Although Petitioners have not presented this Court with copies of all the materials on which the [Tribunal] relied, there is no reason to doubt the [Tribunal]'s

12

interpretation of those materials." *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Earth Constr. Corp.*, No. 21 Civ. 1443 (JPC), 2021 WL 4975690, at *3 (S.D.N.Y. Oct. 25, 2021) (internal quotation marks omitted).  Moreover, "nothing suggests that the arbitration decision was made arbitrarily, exceeded the [Tribunal]'s jurisdiction, or otherwise was contrary to law." *Id.* (internal quotation marks omitted).

Petitioners are therefore entitled to judgment as a matter of law, and the Court grants their timely application for confirmation of the HKIAC award in their favor.

## IV.  Conclusion

For these reasons, the Petition is granted and the Court confirms the Original Award of the HKIAC, as modified by the Corrected Award, in its entirety.   The Clerk of Court is respectfully directed to enter judgment in favor of Petitioners, with Respondents jointly and severally liable, as follows: judgment against Respondents in favor of New Asia in the amount of $3,985,610.96, with an additional daily sum of $3,857.76 running from October 30, 2020, until the full amount of the February 2019 Loan is repaid; judgment against Respondents in favor of Huaxintong in the amount of $6,389,315.07, with an additional daily sum of $6,221.53 running from October 18, 2020, until the full amount of the April 2019 Loan is repaid; judgment against Respondents in favor of Huaxintong in the amount of $5,356,164.38, with an additional daily sum of $5,282.79 running from October 5, 2019, until the full amount of the May 2019 Loan is repaid; and judgment against Respondents in favor of Huaxintong in the amount of $2,133,698.63, with an additional daily sum of $2,104.47 running from June 1, 2020, until the full amount of the January 2020 Loan is repaid.

The Clerk of Court also is respectfully directed to close this case.

SO ORDERED.

Dated: August 1, 2025  
New York, New York

_____  
JOHN P. CRONAN  
United States District Judge